UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LOCAL SEARCH ASSOCIATION,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO; and EDWIN M. LEE, in his official capacity as MAYOR of the City and County of San Francisco,<br><br>    Defendants. | Case No: C 11-2776 SBA<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION; ORDER REFERRING MATTER FOR MANDATORY SETTLEMENT CONFERENCE**<br><br>Docket 186 |

    Plaintiff Local Search Association ("LSA"), a trade association comprised of publishers and businesses involved in the local search industry, filed the instant action against Defendants City and County of San Francisco, the Board of Supervisors of San Francisco and Mayor Edwin M. Lee (collectively, "the City" or "Defendants"), to challenge the constitutionality of City Ordinance 78-11 ("Ordinance"). The Ordinance proposes to restrict the distribution of Yellow Pages telephone directories in the interest of reducing environmental waste.

    The parties are presently before the Court on Defendants' Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction. Dkt. 186. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

On May 19, 2011, the Board of Supervisors passed the Ordinance, which created the Yellow Pages Distribution Pilot Program ("Pilot Program"). The Pilot Program purports to regulate the distribution of commercial telephone directories, such as the Yellow Pages, for a three-year period beginning May 1, 2012.[1] The Ordinance requires Yellow Pages publishers to deliver directories only to San Francisco residents and businesses who have requested them or who accept delivery in person. S.F. Environment Code § 2103. The San Francisco Department of the Environment is charged with implementing the Ordinance. Id. § 2106. The Ordinance was originally set to take effect on May 1, 2012, but has never been implemented. Id. § 2109.

On June 7, 2011, LSA filed suit against the City, pursuant to 42 U.S.C. § 1983, alleging constitutional violations of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Supremacy Clause, and similar violations of free speech and equal protection under the California Constitution. On September 1, 2011, LSA filed a motion for preliminary injunction to enjoin the Ordinance, claiming that it has, and will, likely cause irreparable financial harm by depriving its members of, among other things, their free speech rights. Dkt. 48. Before the hearing on the motion transpired, however, the City indicated that it was voluntarily postponing enforcement of the Ordinance until thirty days after the Ninth Circuit issued its ruling in Dex Media West, Inc. v. City of Seattle, a case which also involves an analogous municipal ordinance restricting the distribution of the Yellow Pages. No. 11-35399 (9th Cir. filed May 11, 2011); No. 11-35787 (9th Cir. filed Sept. 21, 2011).

On October 15, 2012, the Ninth Circuit issued its decision in Dex Media West, Inc. v. City of Seattle, 696 F.3d 952 (9th Cir. 2012), which invalidated the Seattle ordinance on the ground that it violated the publisher-plaintiffs' First Amendment rights. In reaching its decision, the Ninth Circuit held that Yellow Pages telephone directories qualified as protected speech under the First Amendment and therefore the ordinance was subject to a strict scrutiny

---

[1] The Ordinance is codified at Chapter 21 of San Francisco Environment Code, sections 2101 to 2108.

1 analysis. Id. at 965-66. In recognition that the Ordinance would not pass muster under Dex
2 Media, the City amended the San Francisco Environment Code by adding section 2109, which
3 suspends implementation of the Ordinance. This section, approved by Mayor Lee on
4 December 7, 2012, provides as follows:

> **SEC. 2109. SUSPENSION OF YELLOW PAGES DISTRIBUTION PILOT PROGRAM**
>
> (a) Chapter 21 of the San Francisco Environment Code, Sections 2101 through 2108, is suspended. During the period of suspension, Chapter 21 shall have no force or effect and shall not be enforced.
>
> (b) In the event that, upon further proceedings in *Dex Media West, Inc. v. City of Seattle*, the United States Court of Appeals for the Ninth Circuit or the Supreme Court of the United States finally holds that the City of Seattle's restrictions on the distribution of Commercial Phone Directories are consistent with the First Amendment to the United States Constitution, then the suspension of Chapter 21 shall be lifted one year from the date the mandate issues in that case.
>
> (c) In the event that the suspension of Chapter 21 is lifted as described in the foregoing subsection (b), then Chapter 21 shall be in force and effect for three years following the date the suspension is lifted, notwithstanding any conflicting sunset date set forth in Section 2108.

S.F. Environment Code § 2109.

Based on its recent suspension of the Ordinance, the City now moves to the dismiss the action for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Dkt. 186. The City contends that its suspension of the Ordinance renders LSA's claims moot. Alternatively, the City argues that because it is unlikely that the Ordinance will ever be enforced, LSA's claims should be dismissed for lack of standing and ripeness. LSA opposes the motion, pointing out that the Ordinance has not been repealed, and thus, remains subject to implementation in the event the governing law changes. The motion has been fully briefed and is ripe for adjudication.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes the district court to dismiss an action for lack of subject matter jurisdiction. Standing, ripeness and mootness all pertain to a federal court's subject matter jurisdiction under Article III, and are appropriately raised in a

1  motion under Rule 12(b)(1).  See Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115,
2  1122 (9th Cir. 2010); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "A jurisdictional
3  challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting
4  extrinsic evidence."  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.
5  2003).

6  **III.    DISCUSSION**

7        Federal courts are courts of limited jurisdiction.  The power to hear a particular case is
8  circumscribed by Article III of the United States Constitution, which extends federal judicial
9  power only to actual "Cases" and "Controversies."  U.S. Const., art. III, § 2, cl. 1; Whitmore v.
10 Arkansas, 495 U.S. 149, 154-55 (1990).  "Two components of the Article III case or
11 controversy requirement are standing and ripeness."  Bova v. City of Medford, 564 F.3d 1093,
12 1096 (9th Cir. 2009).  "The oft-cited Lujan v. Defenders of Wildlife case states the three
13 requirements for Article III standing: (1) an injury in fact that (2) is fairly traceable to the
14 challenged conduct and (3) has some likelihood of redressability."  Public Lands for the
15 People, Inc. v. U.S. Dept. of Agriculture, 697 F.3d 1192, 1195-96 (9th Cir. 2012) (citing Lujan,
16 504 U.S. 555, 560-61 (1992)).  The ripeness requirement is satisfied where there is a "live"
17 controversy.  Regional Rail Reorganization Act Cases, 419 U.S. 102, 138 (1974).

18       Both standing and ripeness are evaluated at the time the action is commenced.
19 Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1170 (9th Cir. 2002) ("Standing is
20 determined as of the commencement of litigation."); Sierra Club v. U.S. Army Corps of Eng'rs,
21 446 F.3d 808, 814 (8th Cir. 2006) ("Jurisdictional issues such as standing and ripeness are
22 determined at the time the lawsuit was filed").  However, "[a]n actual controversy must be
23 extant at all stages of review, not merely at the time the complaint is filed."  Bernhardt v.
24 County of Los Angeles, 279 F.3d 862, 871 (9th Cir. 2002).  Thus, a legal dispute may become
25 moot, and hence, no longer justiciable, based on developments during the course of the lawsuit.
26 Already, LLC v. Nike, Inc., — U.S. —, 133 S.Ct. 721, 726 (2013) ("a case becomes moot—
27 and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues
28

presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'") (quoting in part Murphy v. Hunt, 455 U.S. 478, 481 (1982)).

### A. MOOTNESS

The City's primary argument for dismissal is that its recent suspension of the Ordinance moots the instant controversy. A case can be rendered moot when the challenged statute or regulation "is repealed, expires, or is amended to remove the challenged language." Log Cabin Republicans v. United States, 658 F.3d 1162, 1166 (9th Cir. 2011) (per curiam). This principle, however, is inapposite under the facts presented.[2] The City has not repealed the Ordinance, nor has it removed its offending provisions. Rather, the City has left the Ordinance intact and simply held it in abeyance until such time as the legal impediments to its implementation no longer exist. Such a course of action is insufficient to moot a constitutional challenge to a municipal ordinance. See Ballen v. City of Redmond, 466 F.3d 736, 741 (9th Cir. 2006) (holding that a city's enactment of an interim ordinance rescinding the challenged ban on commercial signage following an adverse district court ruling did not moot plaintiff's constitutional challenge where the city indicated that it would reenact the old ordinance if it succeeded on appeal); see also Pleasureland Museum, Inc. v. Beutter, 288 F.3d 988, 999 (7th Cir. 2002) (holding that the city council's moratorium ceasing enforcement of challenged ordinances until the "matter is resolved" did not moot constitutional challenge because the moratorium was not permanent). Tellingly, the City fails to cite any authority holding that the suspension of a statute—as opposed to its repeal—is sufficient to render a controversy moot. Accordingly, the Court rejects the City's contention that LSA's claims are moot.

### B. STANDING AND RIPENESS

As an alternative matter, the City contends that because the Ordinance has not yet been enforced and is unlikely to be enforced due to its suspension, LSA cannot demonstrate that it has Article III standing or that its claims are ripe. Mot. at 6-8. These contentions are

---

[2] The parties also disagree whether this rule applies only to state statutes, or whether it also applies to municipal ordinances. The Court need not reach that dispute, because, even if it applies to an ordinance, the fact remains that the City has not repealed the Ordinance.

1 misplaced. As noted, standing and ripeness are evaluated at the time the action is commenced
2 and are not obviated by subsequent developments in the action. See Flintkote Co. v. General
3 Acc. Assur. Co., 410 F. Supp. 2d 875, 882 (N.D. Cal. 2006). At the time LSA filed suit, the
4 Ordinance was slated to take effect on May 1, 2012. It was not until *after* LSA initiated this
5 lawsuit that the City voluntarily suspended the implementation of the Ordinance, initially
6 pursuant to a decision by the Director of the City's Department of the Environment, and more
7 recently, by the enactment of Environment Code section 2109. As such, because the City's
8 voluntary suspension of the Ordinance transpired subsequent to the filing of this action, the
9 suspension does not obviate LSA's jurisdictional authority to seek judicial relief through this
10 action.

    **C.**    **SETTLEMENT CONFERENCE**

12 In light of the Court's ruling above, further litigation appears inevitable. At the same
13 time, given the extant factual and legal landscape, there is no reason that parties acting
14 *reasonably and in good faith* would not be able to settle the action. Therefore, before investing
15 further resources into this dispute, the parties shall participate in a mandatory settlement
16 conference before Magistrate Judge Donna Ryu.[3] The settlement conference shall take place
17 within forty-five (45) days of the date this Order is filed. In the event the action does not
18 resolve by way of settlement, the Court will enter a scheduling order regarding further motion
19 practice in this case.

**IV.**   **CONCLUSION**

21 For the reasons set forth above,
22 IT IS HEREBY ORDERED THAT:
23     1.    Defendants' Motion to Dismiss Complaint for Lack of Subject Matter
24 Jurisdiction is DENIED.

---

[3] Magistrate Judge Ryu is the assigned discovery judge, though no discovery disputes have yet been presented to her. Any objections to Magistrate Judge Ryu presiding over the settlement conference shall be filed with the Court within two days of the date this Order is filed.

2.       The action is REFERRED to Magistrate Judge Donna Ryu for a mandatory settlement conference to take place within forty-five (45) days of the date this Order is filed. Any objections to Magistrate Judge Ryu presiding over the settlement conference shall be filed with the Court within two (2) days of the date this Order is filed.  In the event the action does not settle, the parties shall jointly notify the Court forthwith.

3.       This Order terminates Docket No. 186.

IT IS SO ORDERED.

Dated:  January 31, 2013

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge